UNG CHO,

        Plaintiff,

v.

        Case No. 21-cv-337-pp

SPINNAKER INSURANCE CO.,
and HIPPO ANALYTICS INC.,

        Defendant.

**ORDER DENYING DEFENDANTS' MOTION TO BIFURCATE AND STAY (DKT. NO. 11)**

On February 1, 2021, the plaintiff filed this case in the Washington County Circuit Court, seeking damages for breach of contract and bad faith under an insurance policy issued by the defendant. Dkt. No. 1-2 at 13. He also sought estoppel from enforcement of the statute of limitations and the twelve-month policy provision in his insurance contracts with the defendants. Id. at ¶¶109-10. The plaintiff alleges that his home sustained water damage for which the defendants failed to pay under the insurance coverage. Id. at ¶77. On March 16, 2021, the defendants removed the case to Eastern District of Wisconsin. Dkt. No. 1.

On July 9, 2021, the defendants filed a motion to bifurcate and stay under Rule 42(b). Dkt. No. 11. The court will deny the motion.

1

## I. Background

### A. The Complaint

The plaintiff is an adult resident of Hubertus, Wisconsin. Dkt. No. 1-2 at ¶1. Defendant Hippo Analytics Inc. allegedly issued the plaintiff two homeowners insurance policies (Policy-00 and Policy-01) underwritten by defendant Spinnaker Insurance Co. Id. at ¶¶10-12. According to the complaint, on February 2, 2019, water piping connected to the plaintiff's heating system froze, causing the pipes to burst; water from the pipes damaged the plaintiff's residence and personal property. Id. at ¶15. The plaintiff asserts that the defendants received notice of the incident three days later, on February 5, 2019. Id. at ¶16.

After inspecting the residence on four occasions, a company called Gallagher Bassett, working on behalf of the defendants, made an initial estimate of $101,203.63 under the policy. Id. at ¶18-23. The plaintiff alleges that the residence was vacant on all four occasions. Id. at ¶22. The plaintiff asserts that Hippo opened an additional claim for the plaintiff's personal property, which included damage totaling $135,000. Id. at ¶24. The plaintiff asserts that the defendants reasonably should have foreseen, based on the vacancy of the home on each occasion, that "the initial risk had changed substantially." Id. at ¶¶25-27. Based in part on microbial testing done of the residence, the plaintiff submitted to Spinnaker a demand letter with additional claims on September 25, 2020. Id. at ¶¶43-46. The additional claims totaled $99,300. Id. at 46.

The defendants allegedly paid out the initial payment of $101,203.63, which did not include the plaintiff's additional claims. Id. at ¶47. The plaintiff alleges that the defendants issued the second of the two homeowners insurance policies (Policy-01) on December 26, 2019, after seeing the residence was vacant, and cancelled the policy on April 21, 2020, "concluding that there was a substantial increase in hazard due to the vacancy of the Residence." Id. at ¶¶48, 49, 52.

The plaintiff alleges that the defendant (1) "breached Policy-00 by refusing to pay for covered losses of or damage to the Residence, and breached Policy-00 by not paying full value for [the plaintiff's] covered losses and damage;" (2) "breached Policy-00 by refusing to pay for covered losses of or damage to personal property owned or used by [the plaintiff], and breached Policy-00 by not paying full value for [the plaintiff's] covered losses and damage;" and (3) "breached Policy-01 by canceling the policy due to a substantial increase in hazard because of vacancy, as Defendants knew or should have reasonably foreseen that the Residence had been vacant for more than 60 days prior to issuing Policy-01. Id. at ¶¶75, 76, 85. For the alleged breach of Policy-00, the plaintiff alleges damages,

> including but not limited to the loss of insurance coverage for damage to the Residence caused by water; the loss of insurance coverage for damage to personal property owned or used by [the plaintiff] caused by water; the loss of insurance coverage for damage to the Residence caused by fungi, other microbes, or rot; the loss of insurance coverage for the cost to tear out and replace any part of the residence as needed to gain access to the fungi, other microbes, or rot; as well as attorney fees and costs incurred as a result of Defendants' breaches.

3

Id. at ¶77. With respect to the alleged breach of Policy-01, the plaintiff alleged damages,

> including but not limited to, incurring additional cost of force-placed insurance for the Residence, loss of insurance coverage proceeds under the force-placed policy if there is a loss at the Residence, as well as attorney fees and costs incurred as a result of Defendant's breaches. Further, [the plaintiff] is less insurable as a result of the cancellation of Policy-01.

Id. at ¶86.

In the bad faith claim, the plaintiff argues that the defendants,

> by taking the position that [the plaintiff's] additional damage claims were barred by the twelve-month statute of limitations and the twelve-month policy provision to commence a lawsuit, acted in an arbitrary, unreasonable, and bad faith manner, and failed to act fairly or in good faith with regard to their dealings with [the plaintiff].

Id. at ¶95. He also asserts that the defendants,

> by cancelling Policy-01 due to a substantial increase in hazard due to vacancy of the residence, acted in an arbitrary, unreasonable, and bad faith manner, and failed to act fairly or in good faith with regard to their dealings with [the plaintiff], as Defendants knew or should have reasonably foreseen that the Residence had been vacant for more than 60 days prior to issuing Policy-01.

Id. at ¶96.

Finally, in his third claim, the plaintiff argues waiver of the twelve-month statute of limitations and the twelve-month policy provision surrounding commencing a lawsuit against Spinnaker and asserts that Spinnaker is estopped from asserting the statute or the policy provision as defenses. Id. at ¶¶106-10.

In addition to compensatory and statutory damages, the plaintiff seeks punitive damages, attorney fees and costs. Id. at pages 22-23.

B.  Pleadings on the Motion to Bifurcate and Stay (Dkt. No. 11)

The defendants ask the court to order separate trials on (1) the breach of contract and waiver/estoppel claims and (2) the bad faith claim. The defendants also ask the court to stay discovery on the bad faith claim until the breach of contract and waiver/estoppel claims are resolved. Dkt. No. 11. The defendants argue that "breach of contract is a 'fundamental prerequisite' to proving bad faith." Dkt. No. 12 at 5 (citing Sherman Creek Condominiums, No. 19-cv-1735, 2020 WL 5370770, *4 (E.D. Wis. Sept. 8, 2020)). The defendants contend that denying bifurcation and a stay would cause juror confusion and prejudice, while granting the motion would promote judicial economy. Id. at 7.

The defendants argue that failing to bifurcate the case would be prejudicial because the scope of discovery for the bad faith claim will be "significantly more expansive than what is allowed for breach of contract actions." Dkt. No. 12 at 6-7. (citing Dahmen v. Am. Family Mut. Ins. Co., 247 Wis. 2d 541, 549-51 (Wis. Ct. App. 2001)). The defendants anticipate that in the bad faith discovery, the plaintiff likely would request work product and other confidential material relating to how the plaintiff's insurance claim was handled, none of which would be discoverable for a breach of contract or waiver and estoppel claim. Id. at 9. The defendants seek to protect this information unless it is necessary to produce in bad faith discovery. Id. at 10.

The defendants also urge the court to avoid the potential jury confusion that they assert may arise if jurors are asked to apply different standards to the overlapping facts underlying the bad faith claim and the breach of contract

5

claim. Id. at 7. Finally, the defendants assert that bifurcation would enhance judicial economy, because the bad faith claim relies on the existence of the breach of contract claim. Id.

In his response, the plaintiff focuses on the substantial overlap of the breach of contract, waiver and estoppel and bad faith claims. Dkt. No. 13. The plaintiff points out that courts have discretion to grant or deny bifurcation. Id. at 11 (citing Houseman v. United States Aviation Underwriters, 171 F.3d 1117, 1121 (7th Cir. 1999)). He asserts that courts have used this discretion to deny bifurcation when it would lead to "'duplicitous discovery and protracted litigation.'" Id. at 12 (quoting Sherman Creek, 2020 WL 5370770, at *4).

The plaintiff argues that the issues and facts underlying the claims are "neither separate nor distinct in nature," but "intertwined with the relationships between Spinnaker, Hippo, and Gallagher Basset, a claims services provider." Id. at 2. The plaintiff asserts that the defendants breached Policy-01 by cancelling the policy because of the substantial increase in hazard resulting from the premises being vacant; he asserts that Spinnaker, through either Hippo or Gallagher Bassett, knew or should have known of the vacancy prior to issuing the policy. Id. at 3. The plaintiff argues that "[i]f Hippo and/or Gallagher Basset was an agent or subagent of Spinnaker, Plaintiff's claims for breach of contract, waiver/estoppel, and bad faith cannot be viewed as separate or distinct, as information possessed by Hippo and/or Gallagher Bassett regarding the vacancy of Plaintiff's residence would be imputed to Spinnaker." Id. The plaintiff says this would mean that "the insurer would have

6

lacked a reasonable basis to deny Plaintiff's additional claims as the twelve-month statute of limitation and the twelve-month policy provision was waived." Id. He maintains that Spinnaker improperly canceled Policy-01 because any knowledge that Hippo or Gallagher Basset had about the vacancy would have been imputed to Spinnaker, and thus that in canceling the policy, Spinnaker either knew, or recklessly disregarded, the fact that it had no reasonable basis to deny the additional claims and cancel the policy. Id.

**II.     Analysis**

Wisconsin law controls the substance of the plaintiff's breach of contract and bad faith claims, but the court applies federal procedural law to the defendants' motion to bifurcate and stay. Klonowski v. Int'l Armament Corp., 17 F.3d 992, 995 (7th Cir. 1994) ("As a federal court sitting in diversity, we apply Wisconsin state law to resolve the substantive questions concerning the accident and federal law on any procedural and evidentiary issues.").

The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Rule 42(b) vests the court with the discretion to bifurcate claims under certain conditions.

> First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy. *DeWitt, Porter, Huggett, Schumacher & Morgan v. Kovalic,* 991 F.2d 1243, 1245 (7th Cir. 1993). Only one of these criteria—avoidance of prejudice or judicial economy—need be met before a court can order separation. *MCI Communications v. American Tel. & Tel. Co.,* 708 F.2d 1081, 1166 (7th Cir. 1983). Next, the court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-

7

moving party. *See Angelo v. Armstrong World Industries*, 11 F.3d 957, 964 (10th Cir. 1993). Finally, separate trials must not be granted if doing so would violate the Seventh Amendment. *See Hydrite Chemical Company v. Calumet Lubricants Co.*, 47 F.3d 887, 890 (7th Cir. 1995). The ultimate decision to bifurcate under Rule 42(b) is at the court's discretion and will be overturned only upon a clear showing of abuse. *McLaughlin v. State Farm*, 30 F.3d 861, 870 (7th Cir. 1994).

Houseman, 171 F.3d at 1121.

As this court had stated before,

[w]hen courts in the Eastern District of Wisconsin have granted motions to bifurcate breach of contract from bad faith claims, they have focused on the separate and distinct nature of the claims. See, *e.g.*, Shalock v. State Farm Mut. Auto. Ins. Co., No. 13-C-0538-CNC, 2014 WL 950548, at *1 (E.D. Wis. Mar. 11, 2014); Freda *et al.* v. State Farm Mut. Auto. Ins. Co., No. 12–C–570-CNC, 2013 WL 3829630 (E.D. Wis. July 23, 2013); Poznanski v. Pa. Life Ins. Co., No. 11-C-260-RTR, 2011 WL 2634406 (E.D. Wis. July 5, 2011); Winter v. Liberty Mut. Fire Ins. Co., No. 06-C-800-WCG, 2006 WL 2711804 (E.D. Wis. Sept. 21, 2006). When courts in the district have denied such motions, they have done so based on the threat of duplicitous discovery and protracted litigation. See, *e.g.* Baires Blue Cross Blue Shield of Minnesota v. State Farm Mut. Auto. Ins. Co., No. 16-CV-402-JPS, 2016 WL 4591905, at *4 (E.D. Wis. Sept. 2, 2016); Fiserv Sols, Inc. v. Westchester Fire Ins. Co., No. 11-C-603-CNC, 2012 WL 2120513 (E.D. Wis. June 11, 2013); Ingram v. State Farm Mut. Auto. Ins. Co., No. 10C1108-LA, 2011 WL 1988442 (E.D. Wis. May 19, 2011).

Sherman Creek, 2020 WL 5370770, at *4.

The chief concern with bifurcation is the fact that the claims are related. The complaint articulates the breach-of-contract claim as follows: "Defendants breached Policy-01 by canceling the policy due to a substantial increase in hazard because of vacancy, as Defendants knew or should have reasonably foreseen that the Residence had been vacant for more than 60 days prior to issuing Policy-01." Dkt. No. 1-2 at ¶85. The complaint includes in the

8

articulation of the bad-faith claim the following: "Spinnaker and Hippo, as managing general agent for Spinnaker, by cancelling Policy-01 due to a substantial increase in hazard due to vacancy of the residence, acted in an arbitrary, unreasonable, and bad faith manner, and failed to act fairly or in good faith with regard to their dealings with [the plaintiff], as Defendants knew or should have reasonably foreseen that the Residence had been vacant for more than 60 days prior to issuing Policy-01." Id. at ¶96. The complaint alleges that Gallagher Bassett waived both the statute of limitations and the twelve-month policy provision "while investigating [the plaintiff's] claims"—*claims*, plural. Id. at ¶¶106, 107. All three claims will require discovery into the question of whether, before it issued Policy 01, the defendant knew or had reason to know that the property had been vacant for a significant period.

The defendant's concern that it would be unfairly prejudiced without bifurcation because of the broad scope of discovery in bad faith claims is less compelling where the factual basis of the claims is similar. The defendants assert that the bad faith claims "are very different" from the breach of contract and estoppel claims, asserting that they require analysis of the defendants' claims handling practices. Dkt. No. 12 at 9. The defendants anticipate that the plaintiff likely will seek work product and attorney/client "material" for information about how the plaintiff's claim was handled. Id. The defendants argue that such discovery would not be allowed in a breach-of-contract case. Id. That may be true, but it is not a reason to bifurcate the case. Parties are asked to produce work product and privileged discovery in all sorts of lawsuits;

9

courts use privilege logs, firewalls, *in camera* inspections and other methods to avoid the kind of prejudice the defendants fear.

As for juror confusion, the defendants' concerns are premature. There is no time limit on bifurcation—the fact that a court does not bifurcate a case at the pleadings or discovery stage does not preclude it from bifurcating issues at trial if the case gets that far. If this case reaches the trial stage and the court becomes concerned about jury confusion, it can consider bifurcation at that time. And it is not clear to the court that juries are incapable of applying different standards to different claims. See Baires Blue Cross Blue Shield, 2016 WL 4591905, *4 (rejecting the reasoning of Brethorst v. Allstate Prop. & Cas. Ins. Co., 334 Wis. 2d 23 (2011) and Dahmen v. Am. Fam. Mut. Ins. Co., 247 Wis. 2d 541 (2001)).

Nor would bifurcation promote judicial economy. If the court were to bifurcate at this stage and the case survived summary judgment on the breach of contract/waiver/estoppel claims, the discovery process would start all over again for bad faith. Because there are common, related facts underlying the breach of contract, waiver and bad faith claims, the parties and the court would go through two discovery and summary judgment processes for a common set of facts.

The court will deny the defendant's motion to bifurcate.

### III. Conclusion

The court **DENIES** the defendant's motion to bifurcate and stay pursuant to Rule 42(b). Dkt. No. 11.

10

The court **ORDERS** that the parties must file an updated Rule 26(f) report by the end of the day on **April 15, 2022**.

Dated in Milwaukee, Wisconsin this 16th day of February, 2022.

> **BY THE COURT:**
>
> _____
> **HON. PAMELA PEPPER**
> **Chief United States District Judge**